UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FT. DEVENS RIFLE & PISTOL CLUB, INC., <br><br> Plaintiff, <br><br> v. <br><br> U.S. ARMY GARRISON FORT DEVENS, <br><br> Defendant. | Case No. 22-cv-11288-MJJ |

REPORT AND RECOMMENDATION ON MOTIONS FOR SUMMARY JUDGMENT
[Docket Nos. 89, 91]

March 4, 2025

Boal, M.J.

Plaintiff Ft. Devens Rifle & Pistol Club, Inc. (the "Club") has filed suit against Defendant U.S. Army Garrison Fort Devens (the "Army") as a result of charges requested for the Club's use of the Army's shooting ranges. The Club has brought claims under 5 U.S.C. § 706, the Administrative Procedure Act ("APA"). Both the Army and the Club have filed motions for summary judgment. Docket Nos. 89, 91. For the following reasons, I recommend that Judge Joun grant in part and deny in part each party's motion.[1]

---

[1] Judge Joun referred all pretrial matters to the undersigned on February 9, 2024. Docket No. 53.

I.    FACTS[2]

    A.    The Parties

The Army operates an installation at Fort Devens that includes approximately 25 firing ranges.[3] The Club is a non-profit and member of the Civilian Marksmanship Program.[4] The Club used the Army's firing ranges for approximately thirty years at no charge up and until the end of 2020.[5]

    B.    Esper Memorandum

On June 19, 2020, Secretary of Defense Mark Esper issued a memorandum (the "Esper Memorandum") titled "Reimbursable Activities in Support of Other Entities"[6] that restricted the Department of Defense's ("DoD") expenditure of resources for non-DoD activities:

> Moving forward, the Department will no longer provide non-reimbursable support of any nature to other Federal, State, Territorial, Tribal or local government entities; private groups and organizations; foreign governments; and international organizations (hereinafter non-DoD entity or entities), unless such support is required by statute or, if discretionary non-reimbursable support is authorized but not required by statute, such support: (1) is authorized by the DoD Joint Ethics Regulation or DoD Public

---

[2] The facts are taken from the Combined Statement of Material Facts (Docket No. 99) and the administrative record (Docket Nos. 55, 75, 82). "SOF" refers to statements of fact, while "Resp." refers to responses. In its memorandum, the Club refers to the record as the "so-called" administrative record. Docket No. 92 at 7, 12. When asked about this reference at oral argument, the Club's counsel indicated that the administrative record was satisfactory but that the Army's conclusions based on that record were not.

[3] SOF ¶ 13; Resp. ¶ 13.

[4] SOF ¶¶ 11-12; Resp. ¶¶ 11-12.

[5] SOF ¶ 1; Resp. ¶ 1.

[6] SOF ¶ 14; Resp. ¶ 14.

>       Affairs Guidance; or (2) is provided after approval of an exception under
>       the process prescribed below.[7]

    C.    <u>Reimbursement Policy</u>

To arrive at the appropriate fee, the Army relied on the "Fort Devens Reserve Forces Training Area (RFTA) Reimbursement Policy Standard Operating Procedures (SOP)" (the "Reimbursement Policy") which went into effect on June 17, 2020.[8] The policy sought to create a uniform reimbursement policy for the use of training ranges, facilities, and related areas.[9] It also sought to standardize the reimbursement process thereby reducing administrative time, cost, and the potential for multiple variations in procedures for different customers.[10]

The reimbursement policy directed the Army to charge private entities "for all direct incremental training support costs that are measurable and attributable" to the requested activity.[11] The policy defined "incremental direct costs" as "costs that a base or installation incurs that are directly related to . . . usage . . . and which the base or installation would not otherwise incur."[12] It included examples such as:

>       [R]ental, placement, and pickup of dumpsters and portable latrines;
>       additional refuse pickups, grass mowing, and insect spraying; utilities for
>       metered buildings; costs of consumables, like targets; training area cleanup

---

[7] Docket No. 55-7 at 38. Citations to "Docket No. ___" are to documents appearing on the Court's electronic docket. They reference the docket number assigned by CM/ECF, and include pincites to the page numbers appearing in the top right corner of each page within the header appended by CM/ECF.

[8] SOF ¶ 20 (quoting Docket No. 55-7 at 199-229); Resp. ¶ 20.

[9] SOF ¶ 22; Resp. ¶ 22; <u>see also</u> Docket No. 55-7 at 202. SOF ¶ 22's actual citation to Docket No. 55-7 at 200 appears to be in error.

[10] <u>Id.</u>

[11] SOF ¶ 23 (quoting Docket No. 55-7 at 206); Resp. ¶ 23.

[12] SOF ¶ 24 (quoting Docket No. 55-7 at 209); Resp. ¶ 24.

and damage repair; and employee overtime as a result of the use of the base or installation.[13]

Incremental direct costs for private entities could include direct, general, and administrative costs.[14]

### D. The Firing Range Fee

Many non-Department of Defense law enforcement agencies also use the Army's firing ranges.[15] Prior to October 2020, the Army charged non-military entities $200 per firing range outing along with charges for overtime or large groups.[16]

Starting in October 2020, the Army began charging outside entities a flat fee of $250 per outing.[17] Per the Army, participants must pay these charges even if not requested by the organization using the firing range or even if the organization has its own range safety officer because "they are required to be provided [in accordance with] range operation and/or safety rules and practices."[18] In November 2020, the $250 fee was made up of four categories of costs: (1) $144.12 for portable toilets; (2) $30.82 for one hour of work by a range safety officer; (3) $30.06 for one hour of work by a range technician; and (4) $45 for target wear and tear.[19] The

---

[13] SOF ¶ 25 (quoting Docket No. 55-7 at 209); Resp. ¶ 25.

[14] SOF ¶ 26 (quoting Docket No. 55-7 at 209); Resp. ¶ 26.

[15] SOF ¶ 5; Resp. ¶ 5.

[16] SOF ¶ 6; Resp. ¶ 6.

[17] Id.; see SOF ¶ 19; Resp. ¶ 19.

[18] SOF ¶¶ 46 (quoting Docket No. 55-7 at 45), 47 (quoting Docket No. 55-7 at 45); Resp. ¶¶ 46, 47. The Club disputes these statements but provides no factual support to dispute them. Accordingly, the statements are deemed admitted.

[19] SOF ¶ 7; Resp. ¶ 7.

Army calculated the portable toilet cost on a prorated basis.[20] In an April 2020 contract, the Army agreed to pay $53,881 to a third party to supply portable toilets for eight months.[21] Modifications of the contract later went into effect covering roughly the calendar years 2021 and 2022.[22] In 2021, the portable toilet contract cost the Army $121,662 for "51 'permanently installed units' as well as additional units to 'support scheduled annual training' and 'short term special events.'"[23] In 2022, the Army paid $189,443 for the portable toilets.[24]

The Club does not dispute the contents of the contracts themselves, but rather the Army's prorated calculation.[25] For example, the Club asserts that the appropriate prorated fee for the portable toilets should have been $2.29 per outing.[26] It bases the calculation on figures provided in the administrative record that are related to the 2020 portable toilet contracts. Docket No. 92 at 11 (citing Docket No. 82-1 at 19).[27]

---

[20] SOF ¶ 31.

[21] SOF ¶ 8; Resp. ¶ 8.

[22] SOF ¶ 32; Resp. ¶ 32.

[23] SOF ¶ 33; Resp. ¶ 33.

[24] SOF ¶ 44; Resp. ¶ 44.

[25] See, e.g., Resp. ¶ 33.

[26] Resp. ¶¶ 25, 30-33, 40-44, 46; see also Docket No. 92 at 11.

[27] In calculating the $2.29 per outing charge for portable toilets, the Club asserts that the 2020 contract cost $28,000 and uses that figure as its starting point. Docket No. 92 at 11 (citing Docket No. 82-1 at 19). It then divides $28,000 by the number of provided portable toilet units (51) to get $549 per unit, and it then divides 549 by 240 days (roughly eight months, the length of the contract) to get $2.29 per day. Id. However, the contract provides for an amount of $53,881.00 and five different costs that add up to $53,881. The $28,000 amount cited by the Club is merely one of these five costs that add up to $53,881. Moreover, in the Combined Statement of Material Facts, the Club asserts that the total cost of the 2020 portable toilet contract was $53,881. SOF ¶ 8.

E.  Interactions Between The Parties

In November 2020, the Army notified the Club that it would be required to pay a $250 fee per range outing beginning in 2021.[28]

On December 22, 2020, the Club wrote a letter to the Army challenging the $250 fee as excessive and contrary to both 10 U.S.C. § 7409 and 36 U.S.C. § 40727.[29] On February 10, 2022, the Army asserts that it orally communicated to the Club that it would be required to pay $250 to use the firing ranges.[30]

On February 13, 2022, the Club requested reconsideration,[31] which the Army denied on March 11, 2022.[32] The Army's decision relied on the Esper Memorandum[33] and stated that the DOD was "not funded for purposes of providing access and usage of its ranges and facilities to non-DOD organizations."[34] It included a new breakdown for the $250 fee that the Army asserts was the fee applicable in 2022 to entities such as Plaintiff:[35] (1) $83.24 for portable toilets; (2) $62.64 for two hours of work of a range safety officer; (3) $40.12[36] for two hours of work of a

---

[28] SOF ¶ 18; Resp. ¶ 18.

[29] SOF ¶ 36 (quoting Docket No. 55-7 at 27); Resp. ¶ 36.

[30] SOF ¶ 37; Resp. ¶ 37. The Club asserts that it is unable to admit or deny this statement. It is therefore admitted for purposes of summary judgment.

[31] SOF ¶ 38; Resp. ¶ 38.

[32] SOF ¶ 39; Resp. ¶ 39.

[33] Docket No. 55-7 at 45.

[34] SOF ¶ 39 (quoting Docket No. 55-7 at 45).

[35] SOF ¶ 40 (quoting Docket No. 55-7 at 45).

[36] There is a discrepancy between SOF ¶ 10 and SOF ¶ 42 where one says the range technician cost was $42.12 and the other says $40.12. The actual email from the Army says $40.12. Docket No. 55-7 at 45. This Court therefore uses that amount.

range technician; and (4) $65 for costs of other target-related materials and services.[37]  The decision specified that the charges for the portable toilets, range technician, and "other target-related materials and services" were all calculated on a prorated basis.[38]  The Army acknowledged that, while the Club provides the actual targets, there are other costs that include replacing the wood and materials on the cantilevers (lifters), lead mitigation, range maintenance (e.g. re-grading of berms). The Army attributed the changes in the fee's breakdown to changes in the individual underlying costs.[39]

II.    PROCEDURAL BACKGROUND

On June 26, 2023, Plaintiff filed an amended complaint asserting three causes of action. Docket No. 24.  The first two counts contend that the Esper Memorandum was promulgated in derogation of two federal statutes, 10 U.S.C. § 7409 and 36 U.S.C. § 40727,[40] and that the charges imposed by the Army were arbitrary and exorbitant.  Id. at 1-2, 5.  Plaintiff is seeking a declaratory judgment that its rights have been violated, an order directing that the Army provide Plaintiff and its members access to the firing ranges for only the demonstrated materials and supply costs incurred by the Army in providing the same, and to have its FOIA request

---

[37] SOF ¶¶ 10 (quoting Docket No. 55-7 at 45-48), 42; Resp. ¶¶ 10 (quoting Docket No. 55-7 at 45), 42.  The Club states the Army provided a fee for the Club that differed from that applied to other agencies and entities using the firing range.  However, the Club provides no citation to any evidence that supports this statement.

[38] Docket No. 55-7 at 45-46.

[39] See Docket No. 100 at 6-8.

[40] In its amended complaint, the Club asserts that the proposed fee also violates 36 U.S.C. § 40727. Docket No. 24 at 6 (Count II).  However, the Club makes no arguments based on that statute in either its opening or responsive memorandum.  Accordingly, those arguments are waived. This Court recommends that judgment be awarded to the Army as to Count II on that basis alone.

7

honored.[41]  Docket No. 24 at 6.  The parties agree that the March 11, 2022, denial constitutes the final agency action subject to APA review.

On July 19, 2024, the Army and the Club each filed their respective motions for summary judgment.  Docket Nos. 89, 91.  On July 22, 2024, the Club filed a reply memorandum in support of its motion for summary judgment and in opposition to the Army's motion for summary judgment.  Docket No. 94.  On September 20, 2024, the Army filed its opposition to the Club's motion for summary judgment.  Docket No. 100.  This Court heard oral argument on January 30, 2025.

III.   ANALYSIS

　　A.    Standard Of Review

The Court's jurisdiction in this matter arises under the provisions of the APA, which provides for judicial review of final agency actions.  5 U.S.C. § 706; Atieh v. Riordan, 727 F.3d 73, 75 (1st Cir. 2013).[42]  The APA provides that a reviewing court "shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action."  5 U.S.C. § 706.  Furthermore, the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions" that are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  Id.

---

[41] The third count alleges that the Army failed to provide documents in accordance with Plaintiff's FOIA request within the allowed time.  Docket No. 24 at 6.  At oral argument, the Club's attorney confirmed that it was dropping the third count.  Accordingly, the FOIA count should be dismissed.

[42] The Club curiously asserts that "[t]his is an action for declaratory and injunctive relief, NOT an action brought under the [APA].  Plaintiff, in its Amended Complaint, invoked 5 U.S.C. [§] 702 ONLY to negate Defendant's asserted defense of 'sovereign immunity.'"  Docket No. 92 at 2 (emphasis in original).  As both sides have treated this case as being brought under the APA, this Court will as well.  Indeed, the APA provides the basis for this Court's jurisdiction.

at § 706(2)(A). An agency acts arbitrarily or capriciously if, for example, it has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency. Vanda Pharms. v. United States Food and Drug Admin., 123 F.4th 513, 520-21 (D.C. Cir. 2024) (quotation omitted). If an action is not contrary to law, it must be "reasonable and reasonably explained." Env't Def. Fund v. United States Env't Prot. Agency, 124 F.4th 1, 11 (D.C. Cir. 2024) (citation omitted).

Where the plaintiff brings an APA challenge to decisions of a federal agency, in making its decision, the court's review is presumptively limited to the administrative record in existence at the time of the agency decision. See Camp v. Pitts, 411 U.S. 138, 142 (1973) (the "focal point" of the reviewing court should be the administrative record already in existence, not some new record created after suit is brought). In other words, "a motion for summary judgment in . . . administrative law contexts, is simply a vehicle for teeing up the case for decision on the administrative record." Doe v. Harvard Pilgrim Health Care, Inc., 904 F.3d 1, 10 (1st Cir. 2018) (citations omitted).

"Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." Loper Bright Enters. v. Raimondo, 144 S.Ct. 2244, 2273 (2024).[43] Questions of law are reviewed de novo, while factual findings are reviewed under the substantial evidence standard. Tista-Ruiz de Ajualip v. Garland, 114 F.4th 487, 495 (6th Cir. 2024) (citing Loper Bright, 144 S.Ct. at 2258-59).

---

[43] In its July 19, 2024, memorandum, the Army argued for a deferential standard of review and omitted any mention of Loper Bright. See Docket No. 90 at 9. In its subsequent pleading, the Army did recognize Loper Bright and argued that the decision still permitted deferential review of an agency's factfinding. Docket No. 100 at 7.

Courts must "interpret statutes, no matter the context, based on traditional tools of statutory construction." Loper Bright, 144 S.Ct. at 2268. They must determine the "best reading" of the statute after applying all relevant interpretive tools. Id. at 2266. "[T]he statute's meaning may well be that the agency is authorized to exercise a degree of discretion. Congress has often enacted such statutes. For example, some statutes 'expressly delegate[ ]' to an agency the authority to give meaning to a particular statutory term." Id. at 2263 (quoting Batterton v. Francis, 432 U.S. 416, 425 (1977)).

B.     Count I: 10 U.S.C. § 7409

The Club acknowledges that pursuant to 10 U.S.C. § 7409 the Army has authority to charge the Club a fee but only one that falls within the ambit of Section 7409. Docket No. 92 at 6. Title 10, United States Code, Section 7409 provides in pertinent part:

> (a) Ranges Available.—
> All rifle ranges constructed in whole or in part with funds provided by the United States may be used by members of the armed forces and by persons capable of bearing arms.
>
> (b) Military Ranges.—
>
> (1) In the case of a rifle range referred to in subsection (a) that is located on a military installation, the Secretary concerned may establish reasonable fees for the use by civilians of that rifle range to cover the material and supply costs incurred by the armed forces to make that rifle range available to civilians.
>
> (2) Fees collected pursuant to paragraph (1) in connection with the use of a rifle range shall be credited to the appropriation available for the operation and maintenance of that rifle range and shall be available for the operation and maintenance of that rifle range.

10 U.S.C. § 7409. This Court examines each part of the $250 fee in turn as to whether it either satisfies the requirement that it is a "material and supply costs" or is reasonable.

1. "Material And Supply Costs"

Title 10, United States Code, Section 7409 only allows the Army to charge fees to cover "the material and supply costs incurred by the armed forces to make that rifle range available to civilians." Section 7409 does not define "material and supply costs." "When a statute does not define a term, we typically 'give the phrase its ordinary meaning.'" FCC v. AT & T Inc., 562 U.S. 397, 403 (2011) (quoting Johnson v. United States, 559 U.S. 133, 138 (2010)). When addressing a question of statutory interpretation, courts should begin with the text. See City of Clarksville, Tennessee v. FERC, 888 F.3d 477, 482 (D.C. Cir. 2018).

The Army points to Black's Law Dictionary to define these terms. Docket No. 100 at 3-4. Black's Law Dictionary defines "materials" as "things that are used for making or doing something," and defines "supplies" as the "quantity or amount of something needed or available; the extent of available things needed, demanded, or required." Black's Law Dictionary (12th ed. 2024). The Club argues that both personnel costs and target wear and tear do not constitute "material and supply costs." Docket No. 92 at 9; Docket No. 94 at 2.[44]

This Court agrees that personnel costs do not constitute "material and supply costs" that fall within 10 U.S.C. § 7409. While the Army argues that range safety officers are needed, it overlooks the word "things" and "something" in the definition of "materials" and "supplies." Such words require a tangible component that is missing in the charge for range safety officer and range technician services.

However, target wear and tear constitutes "things that are used for making or doing something" as well as "something needed or available": it is a tangible thing at the shooting

---

[44] The Club omits any detailed argument that the portable toilet costs do not constitute "material and supply costs," and therefore that argument is waived.

range. It therefore falls within the definition of "material and supply costs" under 10 U.S.C. § 7409 and constitutes a permissible charge.

Accordingly, this Court finds that the Army's decision to charge for personnel expenses, such as range safety officers, is unlawful in this context, but that target wear and tear satisfies Section 7409's definition of "material and supply costs".

2. <u>Reasonableness Of Fees</u>

Title 10, United States Code, Section 7409 only allows the Army to establish "reasonable fees for the use by civilians of that rifle range to cover the material and supply costs incurred by the armed forces . . ." 10 U.S.C. § 7409(b). The Club argues not only that some of the various components of the proposed $250 charge do not satisfy the "material and supply costs" definition, but also that each of the components is not reasonable within the meaning of the statute.

a. <u>Portable Toilets</u>

It is undisputed that the Army prorated the cost of its portable toilet contract to allocate the cost among firing range users. Docket No. 93 at 11.[45] It charged on a pro rata basis $144.12 per outing for portable toilets in November 2020 and $83.24 per outing in March 2022.[46]

The Club argues that the portable toilet charges were not reasonable as required by the statute. In particular, the Club has attempted to calculate a pro rata charge with the information provided by the Army and concluded that the pro rata charge should be $2.29.[47] Docket No. 92

---

[45] SOF ¶ 31; Resp. ¶ 31.

[46] SOF ¶¶ 30; 31; 42; 43.

[47] In addition, the Club argues that the charges are unreasonable given the change in charge from $144.12 in November 2020 to $83.24 in March 2022. Docket No. 92 at 8-9. The Army however

at 11. In response, the Army identifies flaws in the Club's calculations. Docket No. 100 at 5-6. It therefore concludes that "there is no basis to prorate the costs of portable toilets as Plaintiff proposes . . . Defendant reasonably calculated the cost for portable toilets by dividing the cost of its portable toilet-contract on a prorated basis." Id. at 6. However, the only numbers provided by the Army to support this cost are the total contract price and the number of units "as well as additional units to support scheduled annual training" and "short term special events." Docket No. 90 at 4. It offers no explanation as to how it arrived at the pro rata charge for each year (such as what it divided by what) nor why the Club should be responsible for costs for training or special events. At oral argument, the Army's counsel agreed that there is nothing in the record to explain the calculations. This Court is therefore unable to evaluate whether the portable toilet charge is consistent with the reasonableness requirement of Section 7409. Accordingly, it must find that the charge for the portable toilets is unlawful.

    b.    <u>Personnel Charges</u>[48]

The Club argues that the personnel charges are unreasonable because the Army has provided no explanation for charging for one hour of work per outing in November 2020 and for two hours of work per outing in March 2022. Docket No. 92 at 8-9. Indeed, the Army does not provide a basis for this change but merely states that "the record offers no indication that the additional hours were unnecessary. It is at least equally likely that range safety officers and range technicians worked more hours in 2022 to compensate for increased use of the firing

---

explains that the charge decreased because there were more portable toilets thereby lowering the per toilet charge. Docket No. 100 at 7.

[48] This Court addresses the reasonableness of the personnel charges in case Judge Joun disagrees with this Court's decision that the charges are not warranted under a plain reading of the "material and supply costs" criteria of the statute.

ranges as the COVID-19 pandemic abated." Docket No. 93 at 12-13.  First, there is no support in the record for the Army's suggestion that more work was required post-pandemic.  Therefore, this Court may not consider that argument.  And the Army's argument that there is nothing in the record that shows the additional hours were unnecessary turns the burden of proof on its head.  When challenged, it is the Army that must show that the charge complied with the statute, not the other way around.  Accordingly, this Court finds that the personnel charges do not comply with Section 7409's reasonableness requirement.

        c.        Target Wear And Tear Fee

As to the target wear and tear fees, the Club appears to argue that the Army has not provided sufficient justification for these costs.[49]  Indeed, it is undisputed that the Army keeps no maintenance or repair records for any of its firing ranges and therefore is unable to attribute any wear and tear, repair, or component replacement costs to the Club specifically.[50]  The Army has not provided any justification for the amount of the wear and tear fee and it is unclear how it could given its acknowledgement that it lacks records to support such a fee.  Accordingly, this Court finds that the wear and tear fee does not comply with Section 7409's reasonableness requirement.

IV.    RECOMMENDATION

For the foregoing reasons, as to Count II (36 U.S.C. § 40727), this Court recommends that Judge Juon grant summary judgment to the Army and deny summary judgment to the Club on the basis that the Club waived its arguments as to that count.

---

[49] The Club also argues that the Army has admitted that its "firing range operating, maintenance, and repair costs are paid by congressionally-appointed Operations and Maintenance (O&M) funds." Docket No. 92.  The Club, however, provides no evidence for this argument.

[50] SOF ¶ 9; Resp. ¶ 9.

As to Count I (10 U.S.C. § 7409), this Court recommends that Judge Joun grant summary judgment to the Club and deny summary judgment to the Army because the Army's March 22, 2022, decision is contrary to law. This Court further recommends that Judge Joun enter a declaratory judgment that the March 20, 2022, decision of the Army violates the APA. I further recommend that the decision be limited to the facts of this case as this Court's analysis largely turns on the Army's inability to explain in this case why its actions were not contrary to the law. With respect to future challenges to such fees, the Army may be in a better position to justify them.[51] For this reason, this Court recommends that Judge Joun not provide the Club its requested relief that its members be allowed access to the range for only the demonstrated materials and supplies costs incurred by the Army.

V.     REVIEW BY DISTRICT COURT

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of service of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999);

---

[51] This Court notes that at oral argument the Army's counsel suggested that the Court should remand the case if it found the Army's explanations lacking. However, the Army's counsel suggested that there did not appear to be any other records available. Moreover, any further explanation by the Army for the imposition of the charges would be an impermissible post hoc rationalization. Accordingly, remand is not appropriate in this case.

Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

                                                 /s/ Jennifer C. Boal
                                                 JENNIFER C. BOAL
                                                 U.S. MAGISTRATE JUDGE